[Cite as *Socha v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-6311.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHAEL P. SOCHA

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant

Case No. 2009-06621

Judge Joseph T. Clark
Magistrate Matthew C. Rambo

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action alleging negligence. After a trial on the issue of liability, the court rendered judgment in favor of plaintiff and the case then proceeded to trial on the issue of damages.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Trumbull Correctional Institution (TCI). On September 14, 2007, plaintiff was sitting on a bench in the Ohio Penal Industries building at TCI waiting to pick up his legal mail. While plaintiff waited, Corrections Captain Douglas Miller entered the building on a bicycle. Miller rode the bicycle to an area behind plaintiff, left it resting against the kickstand, and entered the mail room. A few seconds after Miller left the area, the bicycle fell toward plaintiff, prompting him to quickly stand up from the bench and pivot out of the path of the falling bicycle. According to plaintiff, he felt a "pop" in his groin as he pivoted. After he collected his mail, plaintiff visited the TCI infirmary, where he was examined by both a nurse and doctor and was diagnosed with an inguinal hernia in his right groin. The court concluded that Miller was negligent in his use of the bicycle.

{¶ 3} Plaintiff was born in 1930 and was 77 years of age at the time of the incident. Plaintiff described himself as being in "excellent" physical condition at that time such that other inmates referred to him as "Iron Mike." Plaintiff complained that since the incident his health has steadily deteriorated, testimony that numerous other inmates familiar with plaintiff corroborated. Plaintiff testified that he did not have any prior groin injuries or hernias but that he had previously suffered from an enlarged prostate and chronic constipation, and experienced some hip pain just prior to the incident. Plaintiff stated that after the TCI physician, Dr. Kline, diagnosed him with a right inguinal hernia, no immediate treatment was ordered, but that he returned to the infirmary every few months for Dr. Kline to evaluate the injury. According to plaintiff, from September 2007 until he underwent surgery to repair the hernia over a year later, he was unable to exercise, he stopped conducting health and nutrition classes he had previously held for other inmates, and he generally felt "terrible."

{¶ 4} On November 25, 2008, plaintiff underwent a laproscopic procedure to repair the hernia at an outside hospital. However, the procedure was unsuccessful and plaintiff underwent at second "open" procedure to repair the hernia on December 11, 2008. Plaintiff testified that since the second procedure he has experienced pain in his right groin but that he has "pretty much" become accustomed to it and that it "comes and goes" as he moves about. Plaintiff also currently suffers from hydrocele, an accumulation of fluid around his testicles that causes swelling in his scrotum. Plaintiff related that it is difficult for him to move about because of it, but the condition is more awkward than painful.

{¶ 5} James Kline, D.O. is board-certified in family medicine and has been employed by defendant as a physician at TCI since 2004. His deposition was admitted in lieu of his live testimony. (Defendant's Exhibit B.) Dr. Kline testified that he examined plaintiff in the TCI infirmary on September 14, 2007, and diagnosed him with a small, right, inguinal hernia. Dr. Kline did not form an opinion as to the cause of the

hernia, but stated that 90 percent are congenital. According to Dr. Kline, on April 17, 2007, he gave plaintiff a full physical examination and did not "appreciate" any hernia at that time, and plaintiff had no prior complaints or diagnoses of hernia. He stated that he saw plaintiff several more times throughout the year following his initial diagnosis, including on June 9, 2008, when he noted that the hernia was "slightly larger" but was still "reducible" or capable of being "pushed back in." However, Dr. Kline stated that when he examined plaintiff on September 23, 2008, the hernia had increased in size and plaintiff was in "noted discomfort" so he scheduled plaintiff for a surgical consultation. Dr. Kline testified that he saw plaintiff three times after the initial laproscopic procedure, and several times after the second open procedure. Specifically, Dr. Kline stated that he examined plaintiff on January 12, 2009, noted a small amount of swelling from the surgery, and stated that plaintiff did not need any other treatment for the injury.

{¶ 6} Plaintiff presented the testimony of Albert J. Campbell, III, M.D., whose testimony was admitted by deposition. (Plaintiff's Exhibit 5.) Dr. Campbell is a board-certified general surgeon and estimates that hernia repairs constitute 25-30 percent of his business. Dr. Campbell described hernias as arising from a "broad spectrum" of causes that can be categorized as either chronic or acute. He stated that weightlifting or other continuous straining is a common chronic cause and that something as simple as a violent sneeze or cough can be an acute cause. According to Dr. Campbell, the risk factors for a hernia include being an older male, constipation, heavy lifting, and chronic enlarged prostate.

{¶ 7} In preparing to testify, Dr. Campbell reviewed plaintiff's medical records from approximately 2005 through 2009. He testified that he saw nothing in the records prior to the incident that would indicate plaintiff was suffering from an inguinal hernia, although he admitted that it is possible to have a hernia but not suffer from immediate symptoms. Indeed, a review of plaintiff's medical records from the time he was first incarcerated in 1999 until the incident shows no complaints of groin pain. Dr. Campbell

testified, based upon a reasonable degree of medical certainty, that the inguinal hernia plaintiff suffered was caused by the September 14, 2007 incident.  He further opined that every hernia will eventually need to be repaired surgically, but not always immediately after occurrence, and that recurrence is always an accepted risk of hernia repair surgery, especially when it is done laproscopically.  According to Dr. Campbell, plaintiff's current complaints of pain and physical condition are "consistent" with the surgeries required to repair the hernia.

{¶ 8} While defendant does not dispute that plaintiff suffered from a hernia and a lengthy treatment period for it, it argues that the condition preexisted and was not aggravated by the September 14, 2007 incident.

{¶ 9} In support of its argument, defendant presented the testimony of William J. Shirmer, M.D., a board-certified general surgeon whose deposition was also admitted in lieu of his live testimony.  (Defendant's Exhibit C.)  Dr. Shirmer stated that hernia repair is the most common operation that he performs.  Like Dr. Campbell, Dr. Shirmer identified that plaintiff suffers from many of the common risks factor for hernia, including being an older male who  suffers from an enlarged prostate and constipation.  However, Dr. Shirmer testified that the muscles and forces involved in the September 14, 2007 incident would not cause or aggravate the hernia that plaintiff suffered from.  According to Dr. Shirmer, a hernia such as plaintiff's is caused by a spike of intraabdominal pressure similar to what occurs in car accidents and other "sudden deceleration" events.  Dr. Shirmer explained that the area of the groin where plaintiff's injury occurred contains three layers of overlapping muscles that would tighten during movement like that of plaintiff during the September 14, 2007 incident, therefore making it unlikely for a hernia to occur.  Dr. Shirmer further explained that while plaintiff did not complain of any groin pain prior to the incident, the hip pain he complained of could have been "radiating pain" from the hernia site, an opinion that Dr. Campbell disagrees with.   Dr. Shirmer

concluded that the hernia plaintiff suffered was "more likely than not" part of plaintiff's natural aging process, but could identify no one particular cause.

{¶ 10} Based upon the foregoing, the court finds that plaintiff has established that the right inguinal hernia he was diagnosed with on September 14, 2007, was proximately caused by defendant's negligence. The court finds plaintiff's testimony that he felt pain and discomfort in his groin immediately after the incident, the lack of prior complaints about groin pain, the lack of hernia noted as few as five months prior to the incident and Dr. Campbell's testimony persuasive. The court further finds that while plaintiff certainly suffered a significant amount of pain both as a result of the hernia and the surgeries required to repair it, he failed to establish that his hydrocele condition was a proximate result of the injury or the surgeries.

{¶ 11} Based upon the foregoing, judgment is recommended in favor of plaintiff in the amount of $60,000 for pain and suffering that he experienced as a result of defendant's negligence.

{¶ 12} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Emily M. Simmons
Jeanna R. Volp
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

005
Filed July 2, 2012
To S.C. Reporter January 16, 2013